UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ROBERT W. BERARD and GAIL M. HUDSON,

                       Plaintiffs,

   -against-                                  1:06-CV-891 (LEK/ RFT)

THE TOWN OF ROTTERDAM, CHIEF OF
POLICE JAMES J. HAMILTON, SGT. MIKE
BROWN, LT. DOMINICK DAGOSTINO,
OFF. R.J. DENNY, INV. RICHARD DUNSMORE,
OFF. JEFF JACKSON, OFF. PATRICK KEOUGH,
INV. STEVEN W. MANIKAS, OFF. MICHAEL
RUMBAUGH, OFF. DANIEL P. RYAN, INV.
DONALD SCAVIA, and SGT. WILLIAM STONE,

                       Defendants.

## **MEMORANDUM–DECISION and ORDER**

      Plaintiffs commenced the instant action against Defendants asserting various state law claims and violations of their First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights arising out of their arrest on July 29, 2005.  <u>See</u> Am. Compl. (Dkt. No. 8).  Presently before the Court is Defendants' Motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Mot. (Dkt. No. 33).

**I.    FACTS**

      In July 2005, the Rotterdam Police Department ("RPD") was conducting an investigation into the sale of illegal drugs out of a residence located at 2627 Van Dyke Avenue, Rotterdam, New York.  <u>See</u> Am. Compl. ¶ 5.  The investigation was the product of information received from a confidential informant and other sources that crack cocaine was being sold from the residence.  <u>See</u> <u>id.</u> ¶ 9.  The RPD conducted surveillance on the property and, on three occasions, made controlled

buys through confidential informants. Id. As a result of the investigation, the RPD applied for, and obtained, a search warrant authorizing the search of the property at 2627 Van Dyke Avenue, Rotterdam, New York. Id.; Search Warrant (Dkt. No. 33, Attach. 2). At approximately 1:25 a.m. on July 29, 2005, the RPD executed the warrant. Am. Compl. ¶ 10.

At all times relevant hereto, Plaintiffs were living in a truck-style camper in the driveway of 2627 Van Dyke Avenue.[1] Am. Compl. ¶ 6. Through its Emergency Response Team ("ERT"),[2] the RPD first breached the main residence at 2627 Van Dyke Avenue. Id. ¶ 10. Defendants Keough and Rumbaugh (along with another officer not a Defendant in this action) entered the residence and proceeded to the second floor, where they located and detained John and Dina Franze.[3] See Keough Dep. at 9-10 (Dkt. No. 33, Attach. 11); Rumbaugh Dep. at 27 (Dkt. No. 33, Attach. 13). Keough and Rumbough escorted the Franzes to police vehicles and then prepared to assist with a search of the camper. See Keough Dep. at 10.

After the primary residence was cleared and the Franzes were taken into custody, certain members of the ERT were directed to secure the outlying buildings, including the camper located in the driveway. See Jackson Dep. at 88-89 (Dkt. No. 33, Attach. 10); Stone Dep. at 54-59 (Dkt. No. 33, Attach. 16). As the ERT approached the camper, they heard words to the effect of "who's out there?" Denny Dep. at 40 (Dkt. No. 33, Attach. 8). Plaintiffs, who were inside the camper at the time, were directed to exit the camper. See Am. Compl. ¶ 12. Plaintiff Berard exited the camper

---

[1] The camper was of the type that could mount on the back of a truck. At all relevant times, however, the camper was on stilts in the driveway.

[2] Defendants Brown, Denny, Jackson, Keough, Rumbaugh, Ryan, Scavia and Stone were members of the ERT on the date in question.

[3] Plaintiff Gail Hudson is the mother of Dina Franze.

first. Id. Berard was then taken into custody and arrested. Id. Plaintiff Hudson also was taken into custody and arrested. Id. ¶ 14. At some point while Defendants were attempting to remove Plaintiffs from the camper, an RPD officer sprayed the Plaintiffs' dog, a St. Bernard, with pepper spray. Id. ¶¶ 12, 14. Plaintiffs' camper was never searched.

Plaintiffs were transported to the RPD, where they were processed. Plaintiff Berard was charged with Obstructing Governmental Administration and Resisting Arrest. Am. Compl. ¶ 13. Plaintiff Hudson was charged with Obstructing Governmental Administration. Id. ¶ 14. Plaintiffs were arraigned on the morning of July 29, 2005. Id. ¶¶ 13, 14. Plaintiff Hudson was released on her own recognizance. Id. ¶ 14. Plaintiff Berard was remanded to the Schenectady County Jail and released on $1,000 bail or a $100 bond. See id. ¶ 14; Hudson Dep. at 28 (Dkt. No. 33, Attach. 4). The RPD issued a press release stating the charges against each Plaintiff. Id. ¶ 16. On motion of the Schenectady County District Attorney's Office, the Rotterdam Town Court dismissed the charges against Plaintiffs in furtherance of justice. See id. ¶ 20.

Plaintiffs then commenced the instant action asserting claims of assault, battery, false arrest, false imprisonment, defamation, malicious prosecution, the intentional infliction of emotional distress, and violations of the rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. The general basis for Plaintiffs' claims is their assertion that Defendants had no reason to believe that Plaintiffs were involved in the sale of narcotics, Defendants were informed that Plaintiffs were not suspected of trafficking illegal drugs, the camper was not within the scope of the warrant, and Defendants did not have probable cause to arrest. Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**II.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### III. DISCUSSION

**A. Fourth Amendment Claims**

**1. Unlawful Seizure**

Plaintiffs claim that Defendants violated the Fourth Amendment by unlawfully seizing them during the search of the premises at 2627 Van Dyke Avenue. Plaintiffs concede that the camper was not searched. Accordingly, there is no claim that Defendants unlawfully searched the camper. The sole issue presented is whether Defendants unlawfully detained Plaintiffs in

connection with the search of 2627 Van Dyke Avenue. Plaintiffs argue that Defendants had no right to search the camper and, therefore, any resulting seizure was unlawful. Defendants respond that a search of the camper was within the scope of the search warrant and, therefore, they had the right to detain Plaintiffs during the course of the search.

In Michigan v. Summers, 452 U.S. 692 (1981), the Supreme Court held that "officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" Muehler v. Mena, 544 U.S. 93, 98, 125 S. Ct. 1465 (2005) (quoting Summers, 452 U.S. at 705)). "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler, 544 U.S. at 98 (quoting Summers, 452 U.S. at 705 n.19). Similarly, where a warrant authorizes the search of a location (as opposed to particular persons), it is irrelevant whether the person detained is a suspect. Muehler, 544 U.S. at 100 n.2. "[W]hen a neutral magistrate has determined police have probable cause to believe contraband exists, the connection of an occupant to a home alone justifies a detention of that occupant." Id. (internal citations, quotation, and alterations omitted). Thus, a detention of an occupant of the premises being searched, for the duration of the search, is reasonable under the Fourth Amendment. Muehler, 544 U.S. at 98. "Inherent in [the] . . . authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Id. at 98-99. "[T]he risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" Muehler, 544 U.S. at 99 (quoting Summers, 452 U.S. at 703). This would include detaining occupants through the use of handcuffs. Muehler, 544 U.S. at 99. Based on this authority, it follows that Defendants had authority to detain Plaintiffs provided the

5

underlying search itself was lawful. The Court will now turn to that issue.

In <u>United States v. Ross</u>, 456 U.S. 798, 102 S. Ct. 2157 (1982), the Supreme Court held that a lawful search of a premises generally extends to every part of the premises in which the object of the search may be found, even if additional or separate acts of entry may be required to complete the search. As a result, several courts have held that a warrant authorizing the search of certain premises includes all of its storage areas and curtilage. See <u>United States v. Sykes</u>, 2006 WL 2711460, at *3 (W.D.N.Y. Sept. 20, 2006); <u>United States v. Patterson</u>, 278 F.3d 315, 318 (4th Cir. 2002); <u>United States v. Gottschalk</u>, 915 F.2d 1459, 1461 (10th Cir. 1990) ("A search warrant authorizing a search of certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein."); <u>United States v. Percival</u>, 756 F.2d 600, 612 (7th Cir. 1985) (warrant for search of home permitted search of vehicle outside home that was found on the premises and owned or controlled by the owner of the premises); <u>United States v. Villaruel-Lopez</u>, 2008 WL 1944713, at *2 (D. Or. May 1, 2008). In <u>United States v. Napoli</u>, 530 F.2d 1198, 1200 (5th Cir. 1976), the Fifth Circuit held that a warrant for the search of a house justified a search of a camper located in the driveway. Courts in this District and within this Circuit have similarly held that a warrant generally describing a property permits a search of an automobile located in the driveway. See <u>Sykes</u>, 2006 WL 2711460; <u>United States v. Walker</u>, 922 F. Supp. 732 (N.D.N.Y. 1996) (Munson, S.J.); <u>Warren v. Williams</u>, 2006 WL 860998 (D. Conn. Mar. 31, 2006).

Here, the warrant authorized a search of "the following designated or described place, premises or person, to wit: 2627 Van Dyke Avenue[,] Rotterdam, NY 12306." Dkt. No. 33, Attach. 2. The purpose of the search was to find evidence of crack and/or cocaine and any related paraphernalia. In accordance with the case law cited above, this general premises search warrant

6

was sufficient to allow a search of the house and all areas located at 2627 Van Dyke Avenue in which the objects of the search could be found. This included the camper located in the driveway at 2627 Van Dyke Avenue. Evidence of illegal narcotics certainly could be found in the camper. Further, given the facts that the camper was, at the time, a semi-permanent fixture on the property,[4] it was located "a very short distance from the rear deck of the Franze home," Pls.' Mem. of Law at 9 (Dkt. No. 35, Attach. 35), and Plaintiff Hudson, one of the occupants of the camper, was Dina Franze's mother, it was reasonable to believe that the camper was within the scope of the search warrant and that it could contain the contraband that was the subject of the search. The search warrant, therefore, authorized Defendants to search all the property at 2627 Van Dyke Avenue, including the camper.[5] Because Defendants were authorized to search the entire property, it follows that they also were authorized to detain the occupants of the premises while the search was conducted.

For the foregoing reasons, Plaintiffs' claims arising out of their detention during the course of the search of the premises at 2627 Van Dyke Avenue are dismissed.

### 2.      Excessive Force

Plaintiffs also claim that their detention was effectuated through the use of excessive force. Plaintiff Berard contends that, with his hands cuffed behind his back, Defendant Manikas

---

[4] Although the camper could be removed, at the time, Plaintiffs were residing in the camper and it was up on stilts.

[5] The Court agrees with Plaintiffs that they had a reasonable expectation of privacy in their home–the camper. In this case, however, a search warrant authorizing the search of the "premises" at 2627 Van Dyke Avenue was issued by a neutral magistrate. Plaintiffs do not challenge the validity of the warrant. Thus, a search of the camper would not have been unreasonable. At the very least, reasonable officers could disagree whether the camper was within the scope of the search warrant and, thus, Defendants would be entitled to qualified immunity.

"pull[ed] him backwards with such force that he suffered permanent hearing loss and soft tissue injuries to the knee and back." Pls.' Mem. of Law at 13. According to Plaintiff Berard's deposition testimony, he came out of the camper when directed to do so by Defendants and was "pushed backwards." Berard Dep. at 32 (Dkt. No. 35, Attach. 4). Berard then asked the officers to take it easy with his wife and he was "shoved . . . again." Id. Berard "stepped forward, [and] asked the officer "not to do that to her [grab Gail Hudson]." Id. The next thing Berard knew his "arms were grabbed and pulled up way behind [his] back and [he] was spun and then [he] felt two more officers on [his] side and they slammed [him down] into the railing," causing him severe pain in his ribs. Id. Berard was handcuffed. Berard was then pulled backwards and "went over backwards on the steps while they were pulling [him] and [he] ended up on the ground." Id. at 37. Defendants dispute this account and argue that, even assuming Plaintiff's version of the facts to be correct, they did not use an unreasonable amount of force.

> As the Second Circuit has explained:
>
> The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals. . . . When determining whether police officers have employed excessive force in the arrest context, . . . courts should examine whether the use of force is objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation. . . . The touchstone of the inquiry, then, is reasonableness, and in measuring it, we consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest. . . . We are, of course, mindful that the reasonableness inquiry does not allow us to substitute our own viewpoint; we must judge the officer's actions from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Indeed, the Supreme Court has cautioned that in analyzing excessive force claims, courts must make allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is

necessary in a particular situation. . . .

Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (internal citations, quotations, and alterations omitted). Further, as previously discussed, "[i]nherent in [the] . . . authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Muehler, 544 at 98-99. "[T]he risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" Muehler, 544 U.S. at 99 (quoting Summers, 452 U.S. at 703). This includes detaining occupants through the use of handcuffs. Muehler, 544 U.S. at 99.

The Court finds that Defendants' actions were reasonable under the circumstances. In the present case, Defendants were executing a warrant at a home known to be connected with the illegal sale of narcotics. Although Plaintiffs were not suspects and were persons who may have gotten "caught up in the lawful execution of a search warrant for drugs[,]" Paul v. City of Rochester, 452 F. Supp. 2d 223, 227 (W.D.N.Y. 2006), those facts are irrelevant. Muehler, 544 U.S. at 100 n.2. The warrant was executed at night, when it was difficult to see what was going on. "[T]he execution of a warrant to search for drugs 'may give rise to sudden violence of frantic efforts to conceal or destroy evidence.'" Paul, 452 F. Supp. 2d at 228 (quoting Summers, 452 U.S. at 702-03). Defendants knew that someone was in the camper, but did not know with certainty who it was. According to Berard's version of the facts, he stepped out of the camper at the request of the officers and was asked who else was inside. Berard advised Defendants that his wife and his dogs were inside. Berard was then pushed away from the camper. Berard 50-h Tr. at 54, 56 (Dkt. No. 35, Attach. 3). Berard also was told to "[g]et away from the camper." Id. at 56. Berard asked Defendants to take it easy with his wife and told them not to hurt her. Id. at 55. Berard was again

9

pushed away from the camper. Id. As Defendants "were reaching in to grab [Plaintiff Hudson] and one of them was pepper spraying [the] dog," Berard "stepped forward" and asked the officer "not to do that to her." Berard Dep. at 32. It was at that time that Defendants grabbed Plaintiff's arms, pulled them up behind his back, and pushed him down onto a railing where he was then handcuffed. Id. As Defendants were pulling Plaintiff up and attempting to carry him away, he went backwards over a few steps, causing him to fall.

Crediting Plaintiff's version of facts as true for purposes of this Motion, there is no indication that Defendants used any physical force (other than pushing him away from the camper) until Berard "stepped forward" toward the camper. In other words, the undisputed evidence is that it was Berard's actions that prompted Defendants to act. In light of the fact that Berard stepped toward the camper while Defendants were attempting to secure Hudson and control the St. Bernard dog and after Plaintiff was instructed to stay away from the camper and had twice been pushed away from the camper, and further considering the split-second decisions Defendants had to make, Defendants reasonably could have interpreted Berard's actions as compromising their safety. Defendants, therefore, grabbed Berard's arms, put him on the ground (or against a railing) and secured him. Although Plaintiff fell backwards over some steps as Defendants were carrying him away, there is no indication that he was intentionally pushed over the steps or that this was anything other than accidental or incidental to Defendants' attempts to restrain Berard. Further, although Berard claims to have sustained certain injuries as a consequence of Defendants' actions, he has not pointed to any evidence substantiating the nature of any injuries or demonstrating a connection between the claimed injuries and Defendants' actions. Accordingly, the nature of the injuries alone is insufficient in this case to allow an inference of the excessive use of force. Plaintiffs point to no

evidence or indication that Defendants gratuitously inflicted harm upon Berard. As the court stated in <u>Paul</u>, "Plaintiff's sudden movements . . . during the search for drugs . . . is precisely the type of prelude to a detainee's dangerous act that the [Supreme] Court contemplated in <u>Summers</u>." <u>Paul</u>, 452 F. Supp. 2d at 227-28. While the instant case did not involve a search for weapons, the potential of danger to the officers on the scene and for the destruction of evidence remained very real. The Court, therefore, finds that no fair-minded trier of fact could reasonably conclude that Defendants used excessive force against Berard. At the very least, reasonable officers could disagree whether the force used was necessary under the circumstances and Defendants are, therefore, entitled to qualified immunity. See <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 1095-96 (1986) for the proposition that the acts of government officials are entitled to immunity when "officers of reasonable competence could disagree" as to the legality of the officials' actions).

With respect to Plaintiff Hudson, she claims that officers pulled her out of the camper, causing her to miss a stair from the camper to the ground. Hudson did not, however, fall or sustain any injuries. Plaintiff was then handcuffed. In opposition to Defendants' Motion for summary judgment, Plaintiffs cite no facts upon which a fair-minded jury could reasonably conclude that Defendants used excessive force as to Hudson. According, Hudson's claim for the excessive use of force is dismissed.

Plaintiffs' state law claims of assault and battery must be analyzed under the same reasonableness standard as their claims of excessive force, and therefore are dismissed for the reasons described above. See <u>Paul</u>, 452 F. Supp. 2d at 226; <u>Husbands v. City of New York</u>, 2007 WL 2454106, *10-11, 13-14 (S.D.N.Y, Aug. 16, 2007).

11

### 3.    False Arrest/ False Imprisonment[6]

Plaintiffs next claim that they were arrested for obstructing governmental administration without probable cause. Plaintiffs argue that they may not be convicted of obstructing governmental administration unless it is established that the police were engaged in authorized conduct. Thus, according to Plaintiffs, because Defendants' conduct on the night in question was not authorized, their arrest for obstructing governmental administration was without probable cause. Plaintiff Berard similarly argues that, because his arrest was not authorized, he cannot be arrested for resisting arrest or obstructing governmental administration.

The elements of the offense of obstructing governmental administration in violation of N.Y. Penal Law § 195.05 are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference. Esmont v. City of New York, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005). As to Plaintiff Berard, Defendants contend that he stepped forward and told Defendants "not to do that to [Hudson]" while they were attempting to detain Hudson and execute the search warrant. A reasonable officer could conclude that Plaintiff's actions in stepping toward the camper and saying to Defendants "not to do that to her," after being told to stay away from the camper and twice being pushed back from the camper while Defendants were attempting to secure Hudson and the dog and execute the search warrant, constituted an attempt to prevent a public official from performing an official function by means of physical force or interference. See Decker v. Campus, 981 F. Supp. 851 (S.D.N.Y. 1997)

---

[6] False arrest has been described as a subspecies of false imprisonment. See, e.g., Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 1095 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). Thus, Plaintiffs' claims for false arrest and false imprisonment will be analyzed together under the more specific claim of false arrest.

(Police had probable cause to arrest for obstruction of governmental administration where plaintiff failed to comply with deputy sheriff's instruction to "step back" from the scene of an accident and physically broke away from the sheriff, who had been called to assist in a rescue attempt). Accordingly, Defendants had arguable probable cause to arrest him for obstruction of governmental administration. Accordingly, Plaintiff Berard's false arrest claim must be dismissed.

The Court finds that there are triable issues of fact concerning whether Defendants had probable cause to arrest Hudson.[7]  First, there is a factual dispute concerning the length of time it took Hudson to comply with the directives that she exit the camper.  Second, even assuming it took Hudson several minutes to comply, there is a question of fact whether any such delay constituted the kind of "physical interference" necessary to violate the statute.

    **4.**        **Malicious Prosecution**

Plaintiffs next assert claims of malicious prosecution.  To succeed on such a claim, Plaintiffs must demonstrate that the underlying criminal proceedings terminated in their favor.  This requirement is satisfied when the final disposition involves the merits and indicates innocence on the part of the accused.  There is no determination on the merits or manifestation of innocence where, as here, the underlying criminal charges are dismissed in the furtherance of justice pursuant to N.Y. Crim. Proc. Law § 170.30(1)(g) on the motion of the district attorney.  Dobies v. Brefka, 263 A.D.2d 721 (3d Dep't 1999); Miller v. Star, 123 A.D.2d 750, 751 (2d Dep't 1986); see also Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999); Ferlito v. City of Oswego, 2006 WL 2238939 (N.D.N.Y. Aug. 4, 2006) (Munson, S.J.); Smith-Hunter v. Harvey, 95 N.Y.2d 191, 197 (2000);

---

[7] Plaintiffs' arguments that their arrests were without probable cause because Defendants' actions were unauthorized are rejected for the reasons previously discussed.

People v. Nuccio, 78 N.Y.2d 102 (1991). Such dismissals may be re-prosecuted. Nuccio, 78 N.Y.2d at 105-106. Accordingly, Plaintiffs' malicious prosecution claim must fail.

**B.       Civil Rights Conspiracy**

Plaintiffs contend that Defendants conspired to deprive them of their civil rights. For reasons previously discussed, Berard has failed to show that Defendants violated his civil rights. Accordingly, any conspiracy claims brought by him are dismissed. With respect to Plaintiff Hudson, she points to insufficient evidence of a conspiracy. The only potential civil right violation remaining is for false arrest. The fact that Defendants may have known that she was not a suspect with respect to the search warrant is irrelevant. As discussed, Defendants conducted a lawful search pursuant to a valid warrant. That warrant included searching the camper (which was not done) and detaining persons found on the premises, including Hudson. Plaintiff points to insufficient evidence, direct or circumstantial, upon which a fair-minded trier of fact could reasonably conclude that Defendants agreed to deprive Hudson of her civil rights by falsely charging her with the obstruction of governmental administration.

**C.       Municipal Liability**

Plaintiffs also seek to impose liability upon the Town of Rotterdam. Plaintiffs' arguments in this regard pertain solely to the execution of the warrant, Plaintiffs' detention, and the use of force. As previously discussed, these actions were lawful and reasonable. There being no constitutional violation, there can be no municipal liability.[8] As the claims against the Town of Rotterdam for municipal liability are dismissed, the Town of Rotterdam is dismissed as a Defendant

---

[8] Plaintiff Hudson does not assert a basis for imposing municipal liability in connection with her false arrest claim.

in this action.

**D.      Fourteenth Amendment**

Plaintiff also asserts unspecified claims under the Fourteenth Amendment. In response to Defendants' Motion for summary judgment, however, Plaintiffs make no argument in support of any such Fourteenth Amendment claims. Accordingly, the Court deems these claims to have been abandoned. In any event, any such claims must be dismissed. Where, as here "the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. 386, 395 (1989). Plaintiffs' claims are properly protected and pursued under the Fourth Amendment. Id. Accordingly, the Fourteenth Amendment claims are dismissed.[9]

**E.      First Amendment**

To the extent Plaintiffs assert a First Amendment claim,[10] that claim must be dismissed because they have failed to demonstrate that Defendants' actions were on account of protected speech or that Defendants otherwise infringed upon Plaintiffs' right to free speech.

**F.      Eighth Amendment**

Plaintiffs next assert a claim under the Eighth Amendment. Any Eighth Amendment claims must be dismissed because all of the alleged conduct occurred prior to any criminal

---

[9] To the extent Plaintiff brings claims of the use of excessive force under the Fourteenth Amendment, those claims have been addressed *supra*. See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) ("[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.").

[10] Although Defendants moved to dismiss a First Amendment claim, the Court does not read the Amended Complaint to assert a First Amendment violation.

15

convictions. See Walsh, 194 F.3d at 47 ("[T]he Eighth Amendment's protection does not apply until after conviction and sentence.") (internal quotations and citation omitted). Plaintiffs' claims of the excessive use of force have been addressed *supra*. Moreover, Plaintiffs have abandoned their Eighth Amendment claims, as Plaintiffs make no argument in support of those claims in their response to Defendants' Motion for summary judgment.

### G. Fifth Amendment

Plaintiffs' claims under the Fifth Amendment must be dismissed because, as is relevant hereto, the Fifth Amendment only applies to claims against federal officials. See Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952); Birdsall v. City of Hartford, 249 F. Supp.2d 163, 170 (D. Conn. 2003).

### H. Defamation

Plaintiffs' Complaint assert claims of defamation based upon the press release issued by the RPD. The press release stated as follows:

> At approximately 1:15 a.m. members of the Rotterdam Police Emergency Response Team, raided 2627 Van Dyke Avenue in the Town. Arrested at the scene were John Franze, D.O.B. 8/26/53 of 2627 Van Dyke Avenue and Dina M. Franze, D.O.B. 10/07/70 also of 2627 Van Dyke Avenue. Both subjects were charged with three counts of Criminal Sale of a Controlled Substance 3d Degree, a Class B Felony, three counts of Conspiracy 4th a Class E Felony and three counts of Endangering the Welfare of a Child a Class A misdemeanor. Also arrested at the scene was Robert W. Bard [sic], 57 of 2627 Van Dyke Avenue for Obstruction of Government Administration and Resisting Arrest and Gail M. Hudson 53 of 2627 VanDyke Avenue for Resisting Arrest. The arrests were the result of a month long investigation by the Rotterdam Police Detective Division.

Upon review of the record evidence, the statements contained in the press release concerning

Plaintiff Berard are true.[11]  He was charged with Obstructing Government Administration and Resisting Arrest.  Further, his arrest did occur following a lengthy investigation by the RPD.  As to Plaintiff Hudson, however, the press release falsely states that she was charged with resisting arrest, whereas she was actually charged with obstructing government administration.  Defendants argue that this discrepancy is a "minor detail" that is not actionable.  In their response to Defendants' Motion for summary judgment, Plaintiffs fail to offer any argument in support of their defamation claim, or to rebut Defendants' argument that the discrepancy is a minor detail and thus not actionable.  Thus, Plaintiffs have abandoned their defamation claims, and the claims are dismissed.

**I.      Intentional Infliction of Emotional Distress**

Lastly, Plaintiffs assert a claim for the intentional infliction of emotional distress.  To establish liability for the intentional infliction of emotional distress, Plaintiffs must demonstrate that Defendants' conduct was "extreme and outrageous" and "so transcend[ed] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society."  Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985).  Plaintiffs undoubtedly endured an unpleasant experience on July 29, 2005.  However, as explained, most of what transpired on that day was lawful and justified.  The only actions that may not have been lawful and justified include charging Plaintiff Hudson with obstruction of governmental administration (a claim of false arrest) and falsely issuing a press release stating that she was charged with resisting arrest (defamation).  These two issues, even if true, are insufficiently severe or outrageous to sustain a claim for the intentional infliction of emotional distress.  See Murphy v. County of Nassau, 203 A.D.2d 339 (2d Dep't 1994).  Moreover, in opposition to Defendants' Motion, Plaintiffs have not pointed to any evidence of actual emotional

---

[11] The misspelling of Plaintiff Berard's name in the press release is not actionable.

harm.  Accordingly, this claim must be dismissed.

### IV.     CONCLUSION

Therefore, based on the foregoing, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 33) is **GRANTED in part and DENIED in part**.  Defendants' Motion is **DENIED** in respect to Plaintiff Hudson's false arrest claim as against the individually named Defendants.  In all other respects, the Defendants' Motion is **GRANTED**.  The Town of Rotterdam is **DISMISSED** as a Defendant in this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.


DATED: January 12, 2009
    Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge